UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| D. GORTON and PAUL HOSEFROS,<br><br>          Plaintiffs,<br><br>   -against-<br><br>NEW YORK CITY DEPARTMENT OF<br>PARKS & RECREATION,<br><br>          Defendant. | Case No.: _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs D. Gorton ("Gorton") and Paul Hosefros ("Hosefros," and collectively with Gorton, "Plaintiffs"), by and through their undersigned counsel, complain and allege against defendant New York City Department of Parks & Recreation ("Parks Department" or "Defendant") as follows:

## NATURE OF THE ACTION

1.      This is an action for direct and contributory copyright infringement against the Parks Department, which has exploited Plaintiffs' intellectual property in violation of their exclusive rights under Section 106 of the Copyright Act.

2.      As detailed more fully below, Plaintiffs are former New York Times photographers who own copyrights in a series of photographs (the "Images") that was part of a project they initiated and took to the Parks Department as freelance photographers during the newspaper strike that left them unemployed during the summer of 1978.

3.      The Parks Department never licensed or returned the Images to the photographers after the project's completion, and instead left the Images in boxes, untouched, for decades.  It was

only recently, in October 2017, that an archivist unearthed the treasure trove of historic Images, which documented how New Yorkers spent their summer in city parks and beaches in 1978.

4.     The Parks Department had an instant hit with this never before published collection of rare Images on their hands.  These Images became a centerpiece in a massive marketing effort in 2018; the Parks Department held an exhibition of the Images, sold art prints, and widely distributed the Images to the press for publication—by local blogs like Manhattan Times News, PetaPixel, and 6sqft, and international news outlets, such as The New York Times, The Daily Mail, and The Economist.  The Images from the summer of 1978 went viral.  In fact, The New York Times created, for the first time, a special photo-centric tabloid section separate from the newspaper that featured these never-before-seen Images, over half of which were the photographers' works.

5.     But all the while, the Parks Department never had the rights to exploit the Images. They were aware of the photographers' names and even requested that the photographers be credited if published, but no one reached out or attempted to reach out any of the photographers (all former New York Times photographers) to establish ownership or copyrights in the Images before the massive exploitation and wide dissemination. Even before the exhibition of the Image, when one of the photographers cautioned a Parks Department director about the potential copyright implications, the Parks Department ignored this warning and proceeded to exploit and profit off of the photographers' creations without seeking permission or compensating them.

6.     As a result, the Parks Department knowingly and willfully infringed Plaintiffs' copyrights in their creative works, and materially contributed to further infringements by widely sending the photographs to countless media organizations for worldwide publication.

7.      Accordingly, Plaintiffs are entitled to actual damages and other appropriate relief arising out of Defendant's violations of the Copyright Act.

## PARTIES

8.      Plaintiff D. Gorton is an Illinois resident with an address of 606 West Elm Street Carbondale, Illinois 92901.

9.      Paul Hosefros is an Idaho resident with an address of 1918 Everett Street Caldwell, Idaho 83605.

10.     Defendant New York City Department of Parks & Recreation is a department of the government of New York City, with an address of 830 Fifth Avenue, New York, NY 10065.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501(b) and 28 U.S.C. §§ 1331 and 1338(a).

12.     This Court has personal jurisdiction over Defendant because the Parks Department is a municipal agency of New York City, has its headquarters in New York County, and conducts essentially all of its activities in the city.

13.     The Parks Department should have reasonably expected that its unauthorized use of Plaintiffs' photographs would have consequences within New York.

14.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1)–(2) and 1400.

## FACTUAL BACKGROUND

15.     The events giving rise to this action began in the summer of 1978, when New York's newspaper industry was brought to a standstill by a union strike that left over 1,500 people temporarily unemployed, including Plaintiffs, who were photojournalists for The New York Times.

16.     During the strike, Plaintiffs and the other unemployed photographers of The New York Times, led by legendary photo editor John Morris, formed an agency called the "Photographers of the Times" (the "Agency") to arrange freelance photography assignments for its members.

17.     Plaintiff Gorton came up with an idea to pitch to the Parks Department.  For this project, which the Agency proposed to the Parks Department in a letter, dated August 28, 1978, Plaintiffs and other photographers offered to travel to Parks Department properties around the city and photograph people, structures, and scenes to document the state of the parks.[1]

18.     The letter proposed that the photographers would create 300 photographs of the city parks in exchange for a day rate of $100 per photographer, plus film costs and expenses.   The letter also proposed that the Parks Department would provide an additional compensation for any image selected for limited licensing.

19.     Though the proposal contemplated certain limited uses by the Parks Department, such as showing them as slides to document the state of the parks during presentations, it expressly stated that royalties or additional fees would need to be paid for any commercial uses.

20.     The then-Commissioner of the Parks Department, Gordon Davis, responded in writing and agreed to compensate Plaintiffs on a fixed per-diem basis of $100 per day, plus film processing fees and expenses, and also agreed to pay the additional per image compensation for the images selected, up to 150 images.

21.     As the parties agreed on the material terms of the project, Agency photographers set to work photographing various Park Department properties in September 1978.

---

[1] A representative for Plaintiffs retrieved this letter and other writings documenting the agreement between the parties from John Morris' archives, which were gifted to the University of Chicago Library.

4

22.     The Agency photographers exercised their artistic expertise and retained full creative control over the selection and arrangement of scenes, including which parks to photograph.

23.     At the close of the project, the Agency delivered hundreds of photographic slides to the Parks Department for review and selection.  As was the practice with the delivery of transparency film, the slides were mounted and delivered in protective sleeves or boxes, with the photographers' names either on the slide mount or on the slide box itself, depending on the individual practices of the photographer.

24.     Though the Parks Department paid the photographers the $5,000 day rate, as agreed, it never selected or licensed any Images for use.

25.      The Parks Department also failed to return the slides to the photographers, who returned to work at The New York Times shortly thereafter.

26.     Instead, Images sat in the Park Department's archives for years, untouched.

27.     In October 2017, an archivist uncovered the treasure trove of Images at the Central Park Conservancy's offices that showed historical scenes of parks, beaches, and abandoned properties around in the city during the summer of 1978.

28.     Upon information and belief, the Parks Department failed to research or do any due diligence with respect to ownership or rights in the Images and based merely on a lack of any paperwork from the time period, proceeded to act as if it had full rights to exploit the Images in total disregard to the photographers' rights.

29.     Months later, in March 2018, the Park Department's then-Director of Art and Antiquities, Jonathan Kuhn, contacted one of the photographers, Plaintiff Gorton, regarding the finding and an upcoming exhibition of the Images.

30.     Kuhn also stated that the Parks Department had shared the Images with The New York Times, which intended to publish the Images in a special section in April 2018.

31.     Gorton provided Kuhn with some information about the Agency but also cautioned him about the potential copyright implications.

32.     Indeed, the Agency had no authority to transfer ownership of the Images and Gorton and Hosefros, as authors of the Images, never executed or signed any writing transferring ownership of the copyright in their Images.

33.     Neither Kuhn nor the Parks Department ever sought to obtain Plaintiffs' permission to use the Images.

34.     Without authorization from the copyright holders, the Parks Department proceeded to copy dozens of the original slides, including those owned by Plaintiffs, and developed the slides into high-resolution Images.

35.     The Parks Department then displayed these Images as art prints at a highly publicized public exhibition in May and June 2018.

36.     The Parks Department also made additional art prints of the Images and offered the prints for sale.

37.     Upon information and belief, the Parks Department sold prints of the Images and generated revenue from these sales.

38.     Additionally, upon information and belief, the Parks Department distributed digital copies of the Images to numerous news organizations, blogs, and websites throughout the world for widespread publication.

39.     The New York Times, which was the first to publish the Images, featured over 40 of the Images in a special photo-centric tabloid insert entitled "Scenes Unseen: The Summer of

'78" on or about April 29, 2018, including at least 18 Images taken by Plaintiffs, and one Image on the front page of the newspaper.

40.     Myriad news publications, including, *inter alia*, The Daily Mail, The Economist, Caters News Agency, AvaxNews, Fstoppers, Kottke.org, Lomography, Manhattan Times News, PetaPixel, and 6sqft, also published various of the Images.  Nearly all of the publications attributed the Images to the Parks Department.

41.     A simple Google search of "summer of 1978 New York photos" shows how extensively the photographs were shared and re-shared online, due to the Parks Department's unauthorized distribution.  A true and correct copy of a screenshot of the search results is attached hereto as Exhibit B.

42.     As the Parks Department had sole possession of the original slides, and copied, exhibited, and distributed the Images without Plaintiffs' authorization, the Parks Department usurped Plaintiffs' valuable right of first publication and also deprived Plaintiffs of reasonable licensing fees in their photographs, which are now widely available online.

43.     The Parks Department did not return the original slides, Plaintiffs' property, to Plaintiffs until after Plaintiffs' counsel interceded, but has unlawfully retained the digital copies of the Images.  Plaintiffs have unsuccessfully attempted to resolve the claims with the Parks Department, which initially agreed to negotiate with the Plaintiffs but then withdrew all offers and refused any to engage in any further discussions.

### FIRST CAUSE OF ACTION
#### (Copyright Infringement)

44.     Plaintiffs incorporate and restate by reference the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

45.     The Images captured by Plaintiffs are original works of authorship and constitute copyrightable subject matter under the Copyright Act.

46.     Plaintiffs have valid copyright registrations in their Images.  True and correct copies of Plaintiffs' copyright registration certificates in the Images are attached hereto as Exhibit A.

47.     Plaintiffs have never assigned or otherwise transferred ownership of their copyrights or any of their exclusive rights in their Images.

48.     The Parks Department with full knowledge of the identity of the photographers knowingly and willfully infringed Plaintiffs' copyrights in their Images, by developing the original slides of the Images, publicly displaying the Images at an exhibition, making copies of the Images and selling those copies, and widely distributing copies of the Images to news organization for publication.

49.     The Parks Department's infringements were willful as they proceeded to exhibit, copy, sell, and distribute the Images without authorization even after Plaintiff Gorton warned one of the Parks Department's directors about the potential copyright implications of their use.

50.     Accordingly, Parks Department willfully infringed Plaintiffs' exclusive rights to reproduce, distribute copies, and display their works under 17 U.S.C. § 106.

51.     The Parks Department also usurped Plaintiffs' right of first publication, which courts have routinely recognized as an important and valuable right.

52.     As a result of the foregoing, Plaintiffs are entitled to damages pursuant to 17 U.S.C. § 504(a) in the amount of their actual damages and the additional profits of the Parks Department in an amount to be established at trial.

53.     Pursuant to 17 U.S.C. § 504, Plaintiffs are entitled to an accounting of all gains, profits, and advantages derived by the Parks Department's infringement of Plaintiffs' copyrights so that they may properly determine the full extent of their damages under the Copyright Act.

54.     Pursuant to 17 U.S.C. § 503, Plaintiffs are also entitled to the remedy of seizure and impounding of all materials used in violation of their exclusive copyrights.

## SECOND CAUSE OF ACTION
### (Contributory Copyright Infringement)

55.     Plaintiffs incorporate and restate by reference the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

56.     The Parks Department has also contributorily infringed Plaintiffs' copyrights in their Images by distributing copies of the Images to dozens of news organizations, blogs, and websites for publication, causing further copyright infringements.

57.     The Parks Department alone was responsible for distributing the Images for publication, and, upon information and belief, did so with knowledge that it did not have the authorization or the rights to distribute the Images.

58.     Indeed, as the writings exchanged in 1978 show, the parties never intended to permit future commercial uses of the photographs without adequate compensation.

59.     Still, upon information and belief, the Parks Department distributed the Images to dozens of news organizations with directions to publish the Images with attribution to Parks Department.

60.     Following this widespread distribution, numerous publications, including, *inter alia*, The Daily Mail, The Economist, Caters News Agency, Fstoppers, Lomography, Manhattan Times News, and PetaPixel published the Images without Plaintiffs' authorization, thereby directly infringing Plaintiffs' exclusive rights.

61.   As a result of the foregoing, Plaintiffs are entitled to their actual damages pursuant to 17 U.S.C. § 504(a), in an amount to be established at trial.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant as follows:

1.   Finding that Defendant directly infringed Plaintiffs' copyrights;

2.   Finding that Defendant contributorily infringed Plaintiffs' copyrights;

3.   Ordering Defendant to account for all gains, profits, and advantages Defendant derived its infringements;

4.   Ordering that all copies made or used in violation of Plaintiffs' copyrights, and all means by which such copies may be reproduced, be impounded, destroyed, or otherwise reasonably disposed of;

5.   Awarding damages to Plaintiffs pursuant to 17 U.S.C. § 504 arising out of Defendant's direct and contributory infringements of Plaintiffs' copyrights; and

6.   Granting all such other and further relief as the Court may deem just and proper.

Dated:     New York, New York
             October 4, 2019

By: _____

     Nancy E. Wolff
     Sara Gates
     COWAN, DEBAETS, ABRAHAMS
     & SHEPPARD LLP
     41 Madison Avenue, 38th Floor
     New York, New York 10010
     Tel.: (212) 974-7474
     nwolff@cdas.com
     sgates@cdas.com

     *Attorneys for Plaintiffs D. Gorton*
     *and Paul Hosefros*